ROBERT A. BUCCOLA, ESQ. /  SBN: 232479
ANDREA A. CROWL, ESQ. / SBN: 313624
MIRANDA D. FLICKINGER, ESQ. / SBN: 327548
**DREYER BABICH BUCCOLA WOOD CAMPORA, LLP**
20 Bicentennial Circle
Sacramento, CA 95826
Telephone: (916) 379-3500
Facsimile:  (916) 379-3599

Attorneys for Defendants KRISTINA WILEY and JOHN DE ROSA

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMTRUST INTERNATIONAL UNDERWRITERS DESIGNATED ACTIVITY COMPANY, an Irish corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>RUSS KONDZOLKA, individually and doing business as LE MART FLOORING; KRISTINA WILEY, an individual; and JOHN DE ROSA, an individual,<br><br>    Defendants. | Case No.: 2:20-CV-01459-TLN-KJN<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:      February 4, 2021<br>Time:      2:00 p.m.<br>Courtroom:  2, 15th Floor<br><br>Hon. Troy Nunley |

---

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................ 1

        A.      Factual Background ..................................................................….….......... 1

        B.      Relevant Procedural Background .................................................….....… 2

                1.      Pleadings in the Underlying Action ..................................……… 2

                2.      Pleadings in the Instant Action ......................................……….. 2

                3.      The Instant Motion .............................................................……. 3

        C.      Summary of Argument .........................................................…………... 4

II.     DISCUSSION ................................................................................................ 8

        A.      Standards for Motions for Judgment on the Pleadings Rule 12 (c) ................. 8

        B.      General Liability Insurance Principles ...................................................... 9

                1.  Duty to Defend – Coverage clauses are interpreted broadly in favor of the
                    insured or the claimant…………………………………………...……. 9

                2.  Exclusions are interpreted narrowly against the insurer…………….......... 10

        C.      The settlement demand letter and accompanying materials are inadmissible, as
                reliance on the same not only requires conjecture, but also is against public
                policy……………………………………………………………………… 10

        D.      The settlement demand letter and accompanying materials are unquestionably
                not judicial admissions.   The settlement demand letter is privileged and
                inadmissible and Defendants' Admission in their Answer that they inhaled non-
                silica dust "admits" nothing of relevance here……………………………...… 12

        E.      Causation is Determined by the "Substantial Factor" Test ………….....…….. 14

        F.      AmTrust provides no evidence that the injuries were caused by silica. However,
                even if there existed "concurrent causation," AmTrust owes a duty to defend
                where there is the possibility of bodily injury caused by exposure to construction
                dust not containing silica or silica-related dust particles……………………….. 15

        G.      The Court Has Ample Discretion to Permit Amendment ………………….....… 18

III.    CONCLUSION .………………………………………………...……………….. 18

## TABLE OF AUTHORITIES

**CASES**

Acceptance Ins. Co. v. Syufy Enterprise, 69 Cal.App.4th 321, 323, 328 (1999)……...……… 7, 10, 14

Affiliated Mfrs., Inc. v. Aluminum Co. of America, 56 F.3d 521, 529 (3rd Cir. 1995)……….….…11

American States Ins. Co. v. Progressive Casualty Ins. Co., 180 Cal.App.4th 18, 27 (2009)..10, 14, 17

Am Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (1988) ………………………………..... 6, 13

Atlantic Mutual Ins. Co. v. J. Lamb, Inc., 100 Cal.App.4th 1017, 1034 (2002) ………………… 14

Bank of the West v. Superior Court, 2 Cal.4th 1254, 1265, 1264 (1992) ………………………… 18

Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co., 5 Cal.4th 854, 867 (1993) …….. 10

Bridgeport Music, Inc. v. Justin Combs Publishing, 507 F3d 470, 480-481 (6th Cir. 2007)………. 11

Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1054, fn. 4 (9th Cir. 2011) ………………………………………………………………………………………… 9

Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co., 42 Cal.App.4th 121, 126 (1996) ……………………..………………………….……..…….................................... 10, 17

City of Carlsbad v. Insurance Co. of State of Pa., 180 Cal.App.4th 176, 183 (2009) …………….. 16

Coutard v. Municipal Credit Union, 848 F.3d 102, 114 (2nd Cir. 2017) ……………..…………... 11

Cunningham v. Universal Underwriters, 98 Cal.App.4th (2002) ……………………………..... 14

Davis v. Farmers Ins. Group, 134 Cal.App.4th 100, 104, 107 (2005) ……………………...…..… 7

Edwards v. City of Goldsboro, F.3d 231, 241-243 (4th Cir. 1999) ……………………………... 18

Enron Oil Trading & Transportation Co., Ltd., 132 F. 3d 526, 529 (9th Cir. 1997) …………….. 4, 9

Ferguson v. Neighborhood Housing Servs. Of Cleveland, Inc., 780 F.2d 549, 551 (6th Cir. 1986) …………………………………………………………………………… 6, 13

Garvey v. State Farm Fire & Casualty Co., 48 Cal.3d 395, 407 (1989)…………………………… 15

General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F2d 228, 230 (9th Cir. 1989) ………………………………………………….…. 9

Grange Insurance Association v. Sran, 184 F.Supp.3d 799, 817, E.D.Cal. (2016)………………… 16

Gray v. Zurich Insurance Co., 65 Cal.2d 263, 269, 273 (1996) …………..……………...… 9, 10, 17

Heritage Bank v. Redcom Laboratories, Inc., 250 F.3d 319, 329 (5th Cir. 2001)………..…..…. 6, 13

Horace Mann Ins. Co. v. Barbara B., 4 Cal.4th 1076, 1081 (1993)…………………………...….. 9

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 77-78 (Fed. Cir. 2012)…………...... 12

Liberty Surplus Ins. Corp. v. Ledesma & Meyer Cons. Co. Inc., 5 Cal 5th 216, 223 (2018) …... 8, 16

Lonberg v. City of Riverside, F.Supp.2d 942, 945 (CD CA 2004) ………………..………….... 18

MacDonald v. General Motors Corp., 110 F.3d 337, 341 (6th Cir. 1997)…………………..…… 13

Marquez Knolls Property Owners Assn., Inc. v. Executive Risk Indemnity, Inc., 153 Cal.App.4th 228, 233–234 (2007) ………………………………………………………………………... 7

Montrose Chemical Corp. v. Superior Court, 6 Cal.4th 287, 299–300 (1993)…………..……….. 10

Montrose Chemical Corp. v. Admiral Ins. Co., 10 Cal.4th 645,664 (1995)……………………….16

Palp, Inc. v. Williamsburg National Ins. Co., 200 Cal.App.4th 282, 288–289 (2011)……………... 10

Perez v. Wells Fargo & Co., 75 F.Supp.3d 1184, 1187 (ND CA 2014)……………………….......... 8

Ramada Develop. Co. v. Rauch, 644 F.2d 1097, 1106-1107 (5th Cir. 1981) ……………………... 11

Rhoades v. Avon Products, Inc., 504 F3d 1151, 1161 (9th Cir. 2007) 504 F.3d ….....……………. 11

Ringler Associates Inc. v. Maryland Casualty Co., 80 Cal.App.4th 1165, 1186 (2000) ………….... 9

Sicor Ltd. v. Cetus Corp., 51 F.3d 848, 859-60 (9th Cir. 1995) ……………………………….….... 14

State Farm Mut. Automobile Ins. Co. v. Partridge, 10 Cal.3d 94, 101–102 (1973) ………….. 7, 10, 15

State of Calif. v. Allstate Ins. Co., 45 Cal.4th 1008, 1032, 1035-1036 (2009)……………....….. 15, 16

Truckstop.net, L.L.C. v. Sprint Commc'ns Co., 537 F. Supp. 2d 1126, 1135 (D. Idaho 2008)…. 6, 13

Waller v. Truck Ins. Exch., Inc., 11 Cal 4th 1, 16 (1995) ………………………………….…….9

Westoil Terminals Co. Inc. v. Industrial Indem. Co., 110 Cal.App.4th 139, 146 (2003)………......... 9

Wiley, et al., v. The Floor Konnection, Inc., et. al. …………………………………………....….. 1

Williams v. Chevron U.S.A., Inc., 875 F2d 501, 504 (5th Cir. 1989)………………………….… 12

**STATUTES**

Federal Rules of Evidence 408(a)(2) ……………………………………………………………. 11

Federal Rules of Evidence 403 ………………………………………………………….………. 12

28 USC section 1332 (a) (1) ………………………………………………………………….….. 12

Cal. Civ. Code, § 1638………………..…………………………………………………….……. 18

Federal Rules off Civil Procedure 12 (c) ……………………….………………………….. 3, 9, 19

Federal Rules of Civil Procedure Rule 12(b)(6) ………..……………………………….……. 9, 19

# I.

## **INTRODUCTION**

### A.   **Factual Background**

This declaratory relief action arises out of an insurance coverage dispute, which in turn arises from a pending personal injury lawsuit in Sacramento County Superior Court, <u>Wiley, et al., v. The Floor Konnection, Inc., et al.</u>, (Case No.: 34-2019-00267887.) In that lawsuit, Plaintiffs Kristina Wiley and John DeRosa allege that they hired the Defendants The Floor Konnection and Russ Kondzolka, to remove the tile flooring in December, 2017. By failing to barricade and seal off the home's living areas and HVAC system prior to beginning work, construction dust entered the home causing Wiley and DeRosa to be exposed to this construction dust. All of this dust came from the demolition and removal process. Some of this dust, but not necessarily all of it, seems likely to have come from the tile, grout, mortar, and other materials being removed. As a result, Wiley and DeRosa suffered personal injuries in the form of a respiratory reaction caused by dust and air particulate inhalation.

Wiley and DeRosa then filed a personal injury action in state court against Floor Konnection and Russ Kondzolka. That action remains pending, with Defendant, Kondzolka, being defended pursuant to a reservation of rights. Kondzolka's general liability insurer, AmTrust International Underwriters Designated Activity Company (AmTrust), filed the instant declaratory relief action in this court.

Now, AmTrust has filed a motion for judgment on the pleadings, based primarily upon an exhibit attached to AmTrust's own complaint, and its interpretation of Defendants' Answer to the Complaint and a portion of the Rule 26 joint scheduling report. The motion seeks to establish that an exclusion in AmTrust's general liability insurance policy (for injuries caused by silica or silica-related dust) bars coverage for all plaintiffs' claims being made in the underlying personal injury action, even though it has not been established that the injury causing inhalation of dust was in whole or in part related to silica or silica-related dust.

Defendants now oppose this motion, as AmTrust has failed to offer a shed of admissible evidence to support its factual averments as explained herein.

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

### B.  Relevant Procedural Background

#### 1.  Pleadings in the Underlying Action

The initial Complaint in the underlying action was filed on October 20, 2019, and stated a single cause of action for negligence. Plaintiffs Kristina Wiley and John DeRosa allege that they hired the Defendants to perform certain renovations to their home, including the removal of tile and installation of carpet, expecting the Defendants would take reasonable and necessary steps to ensure their safety and wellbeing, by not exposing Plaintiffs to dangerous substances. (Docket No. 17-1; pages 3 and 4 of 5.) Because Defendants failed to take precautions to prevent dust from escaping the work area, the toxic tile dust migrated through the house, where Plaintiffs were exposed, resulting in a respiratory reaction.

On July 10, 2020, Wiley and DeRosa filed a First Amended Complaint. (Docket No. 17-2.) The only material change was to delete the descriptive word "toxic" where it appeared in the original complaint, leaving Plaintiff's allegations that they suffered respiratory injuries due to the inhalation of ordinary dust.  Neither Complaint alleges that silica or silica-related dust was inhaled. (Id.)

#### 2.  Pleadings in the Instant Action

AmTrust International Underwriters Designated Activity Company, an Irish corporation, is the general liability insurer for Kondzolka and Plaintiff in this declaratory relief action. Initially, AmTrust denied coverage outright. Later, AmTrust changed its position and decided to defend Kondzolka under reservation of rights, and AmTrust then filed the instant action against its own insured, Kondzolka, and against the Plaintiffs in the underlying action, Wiley and DeRosa.

The operative First Amended Complaint was filed July 29, 2020. (Docket No. 7.) The FAC included three attachments. The first attachment was a privileged and inadmissible settlement demand letter and accompanying documents from Wiley and DeRosa's attorneys directed to AmTrust. (Docket No. 7-1, pages 1-71.) The second attachment was the subject insurance policy. (Docket No. 7-2, pages 1-99.) The third and final attachment to the FAC is a letter from AmTrust to its insured dated July 9, 2020, wherein AmTrust advised of its decision to defend its insured under reservation of rights. (Docket No. 7-3, pages 1-17.)

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

On October 7, 2020, Wiley and DeRosa filed an Answer to the FAC. (Docket No. 12, pages 1-4.) In that Answer, Wiley and DeRosa admitted that they inhaled dust generated by Russ Kondzolka, resulting in injuries, without any reference to, or admission that, any said dust contained silica. (Docket No. 12, page 2 of 4.)

### 3. The Instant Motion

This declaratory relief action has been brought by AmTrust, seeking a judicial determination of the insurance coverage dispute. In an effort to escape coverage in this matter, AmTrust has filed a motion for judgment on the pleadings, ostensibly pursuant to FRCP 12 (c). With that motion, AmTrust relies upon a single coverage exclusion for bodily injury arising out of, in whole or in part, inhalation or ingestion of "silica" or "silica related dust."

The exclusion provides as follows:

E. Exclusion— Silica or Silica-Related Dust

A. The following exclusion is added to SECTION I — COVERAGES, paragraph 2. Exclusions of COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

This insurance does not apply to:

"Silica" or "Silica-Related Dust."

a. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica -related dust."

b. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica -related dust."

c. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of "silica" or "silica related dust" by insured or by any other person or entity.

* *

C. The following definitions are added to the Definitions Section:

1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

---

3

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

2. "Silica -related dust" means a mixture or combination of silica and other dust particles. (Combine Policy Exclusions, (ECF 7-2, P. 73.)

**C.     Summary of Argument**

Russ Kondzolka is in the business of removing and installing flooring, and purchased a general liability insurance policy from AmTrust to insure from liability for bodily injury resulting from ordinary negligence occurring while removing old flooring and installing new flooring. Here, Wiley and DeRosa claim they suffered personal injury because Kondzolka was negligent, i.e., in performing his job at his customers' home, he improperly sealed his work area, allowing dust to spread throughout the residence. As a result, Wiley and DeRosa suffered personal injuries in the form of a respiratory reaction exacerbated by fine particulate dust/allergen exposure.

In the instant declaratory relief action, AmTrust seeks to escape coverage for these claims by relying upon a policy exclusion, the "Silica" or "Silica-Related Dust" exclusion, which excludes coverage for "Bodily Injury" arising, in whole or in part, out of the actual, alleged, threatened, or suspected inhalation, or ingestion of, "Silica" or "Silica-Related Dust."[1] With the instant motion, without *any* admissible evidence, AmTrust seeks judgment on the pleadings based upon that exclusion, asking for a judicial determination that based on the pleadings alone, AmTrust is entitled to a judicial determination declaring that AmTrust owes no duty to defend or indemnify its insured, Russ Kondzolka.

Wiley and DeRosa contend that the application of the correct legal standards to AmTrust's motion requires denial of that motion.

First, the appropriate legal standard for motion for judgment on the pleadings is that it will not be granted unless it is "beyond doubt that the [nonmoving party] can prove no set of facts in support of his claim which would entitle him to relief." Enron Oil Trading & Transportation Co., Ltd., 132 F. 3d 526, 529 (9th Cir. 1997).

---

[1] There is no policy exclusion for personal injury or property damage caused by ordinary construction dust, which is a known hazard to both persons and property.

---

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

1      Here, the pleadings in the underlying personal injury case make no mention of silica, silica
2 dust or silica compounds. The silica dust exclusion might only potentially apply to claims for
3 "bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected
4 inhalation of, or ingestion of, "silica" or "silica -related dust."  However, there are no allegations that
5 silica or silica-related dust, or any allegations that the bodily injury claims of Wiley and DeRosa are
6 bodily injury claims "arising, in whole or in part," out of exposure to silica or silica -related dust.
7 This state of the pleadings, by itself, should be dispositive of AmTrust's motion for judgment on the
8 pleadings.

9      So, for this obvious reason, the linchpin of AmTrust's motion for judgment on the pleadings
10 is an exhibit the insurer chose to attach to its own FAC. This exhibit to the complaint consists of a
11 privileged settlement demand letter with attachments from Wiley and DeRosa's attorneys as part of
12 their good faith efforts to settle plaintiff's claims in the underlying personal injury action, without
13 requiring litigation.  Efforts highly encouraged by the bar and a favored public policy practice.
14 Arguing that this settlement demand letter may properly be considered by this Court as a pleading,
15 or as evidence, the insurer raises an array of arguments in an attempt to use the exhibit as evidentiary
16 support for its motion for judgment on the pleadings in an effort to avoid coverage by raising a
17 policy exclusion, which would otherwise be clearly unavailable on the state of pleadings.

18      At the outset, this exhibit is unquestionably inadmissible. AmTrust makes no argument as to
19 how or why a privileged settlement demand letter might be admissible to prove or disprove anything,
20 including the validity or amount of a disputed claim. AmTrust simply asks the court to disregard the
21 Rules of Evidence and accept the admissibility of this settlement demand letter because it is an
22 exhibit to its own Complaint. It is not. The settlement demand letter clearly is inadmissible pursuant
23 to Federal Rules of Evidence 408.

24      Despite this, AmTrust argues that the settlement demand letter is a "judicial admission"
25 while ignoring the requirements of a judicial admission. This argument is based on Wiley and
26 DeRosa's Answer, which in response to allegations in the complaint as to subject matter jurisdiction,
27 admitted only to allegations as to the amount in controversy. AmTrust argues that somehow this
28 admission of the amounts being claimed by the plaintiffs in the underlying personal injury action

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

constitutes a "judicial admission" in the instant case while unable to cite to any authority to support this stretch. AmTrust then doubles down on this meritless argument by pointing to a selected snippet taken from DeRosa's and Wiley's Rule 26 Joint Scheduling Report, stating that "dust from tile, grout and mortar spread throughout the home. . . .Wiley and De Rosa inhaled this dust and suffered injuries." According to AmTrust, this too, constitutes a judicial admission, yet there is nothing in this reference to suggest or imply that any injury provoking dust that Defendants inhaled was in whole or in part the substance silica.

These are not judicial admissions, which are required to "deliberately, clearly and unequivocally dispense wholly with the need for proof of these facts." Truckstop.net, L.L.C. v. Sprint Commc'ns Co., 537 F. Supp. 2d 1126, 1135 (D. Idaho 2008) (quoting Heritage Bank v. Redcom Laboratories, Inc., 250 F.3d 319, 329 (5th Cir. 2001)). The response in the Defendants' Answer had only to do with the amount in controversy, while the inhalation of the dust from the construction project does not dispense with the need to prove beyond doubt that the bodily injuries of the plaintiffs in the underlying action were caused by exposure to silica or silica -related dust, and not ordinary dust. Stated another way, these portions of a pleading, and a joint statement, do not amount to "formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) (quoting Ferguson v. Neighborhood Housing Servs. of Cleveland, Inc., 780 F.2d 549, 551 (6th Cir. 1986)).  (quotations omitted). Further, to qualify as a judicial admission, the admission must be 'deliberate, clear, and unequivocal.'" Truckstop.net, L.L.C. v. Sprint Commc'ns Co., 537 F. Supp. 2d 1126, 1135 (D. Idaho 2008) (quoting Heritage Bank v. Redcom Laboratories, Inc., 250 F.3d 319, 329 (5th Cir. 2001)). That is not the case here.

Nonetheless, AmTrust's moving papers then use what they have tried to morph into "judicial admissions" to dispense with any need for the insurer to prove that these bodily injury claims arise in whole or in part out of exposure to silica or silica-related dust. Additionally, AmTrust provides no evidence on the causation aspect of the exclusion. AmTrust "explains" that language from the silica exclusion "arising in whole or in part, out of" phrase does not impart any particular standard of causation or theory of liability into AmTrust's policy. For that proposition, AmTrust relies upon a

6

state court case broadly interpreting an insuring clause, rather than narrowly interpreting a policy exclusion, which is at issue here. Again, these arguments are without merit and completely ignore applicable legal principles analyzing the duty to defend and the interpretation of insurance policy exclusions.

First, when a suit against an insured alleges a claim that potentially could subject the insured to liability for covered damages, an insurer must defend unless, and until, the insurer can demonstrate, by reference to undisputed facts, that the claim cannot be covered. To establish a duty to defend, an insured need only establish the existence of a potential for coverage; while to avoid the duty, the insurer must establish the absence of any such potential. Thus, in resolving the question of whether a duty to defend exists, the insurer has a higher burden than the insured. The insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. Here, AmTrust has not met, and cannot meet, that heavy burden.

Second, AmTrust points out that under California law, the term "arising out of" is broadly interpreted, and broadly relies upon <u>Acceptance Ins. Co. v. Syufy Enterprises</u>, 69 Cal.App.4th 321, 323, 328 (1999), for that proposition.  AmTrust's reliance is misplaced because that case involved the interpretation of a *coverage clause*, while the instant case requires interpretation of an *exclusion*. The interpretation rules are completely opposite in that coverage clauses are interpreted broadly, while exclusions are interpreted narrowly.  "Whereas coverage clauses are interpreted broadly as to afford the greatest possible protection to the insured [citations], exclusionary clauses are interpreted narrowly against the insurer." <u>State Farm Mut. Automobile Ins. Co. v. Partridge</u>, 10 Cal.3d 94, 101–102 (1973); see also <u>Davis v. Farmers Ins. Group</u>, 134 Cal.App.4th 100, 104, 107 (2005) ["we strictly construe policy exclusions against the insurer*"]; <u>Marquez Knolls Property Owners Assn., Inc. v. Executive Risk Indemnity, Inc</u>., 153 Cal.App.4th 228, 233–234 (2007) ["While coverage clauses are interpreted broadly, exclusionary clauses are construed against the insurer."].) Doubts concerning the potential for coverage and the existence of a duty to defend are to be resolved in favor of the insured.  These are the most basic "hornbook" rules or insurance policy interpretation in California and it is bothersome that AmTrust seems to be representing otherwise to this court.

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

Third, as a consequence, AmTrust applies the wrong causation standard to interpret this policy exclusion, which in turn has caused the failure to rule out the likelihood of concurrent causation of the personal injuries here. While coverage under both first- and third-party insurance is a matter of contract, the contractual scope of third-party liability insurance coverage, as reflected in the policy language, depends on the tort law source of the insured's liability. It is well-settled that the "substantial factor" test utilized to determine tort liability also determines insurance coverage exposure with regard to when covered and excluded events have concurred in causing either bodily injury or property damage: "[W]hen the damages cannot be apportioned between two tortfeasors or between tortious and nontortious causes, a tortfeasor whose acts have been a substantial factor in causing the damages is legally responsible for the whole." Liberty Surplus Ins. Corp. v. Ledesma & Meyer Const. Co., Inc., 5 Cal 5th 216, 223 (2018) ["As to liability insurance coverage, tort principles cover the question of causation"].) As noted above, the insured (and the claimants) need only show that the underlying claim *may* fall within policy coverage, while the insurer must prove it cannot.  Our California Supreme Court has recently as two years ago made clear that covered and excluded causes that combine to contribute to a plaintiff's harm may not be excluded from coverage. Liberty Surplus Ins. Corp., supra.

For all of these reasons, AmTrust's motion for judgment on the pleadings must be denied. Alternatively, even if the Court is somehow persuaded that the motion has any merit, Defendants respectfully request permission to make any necessary amendment to their pleadings.

## II.

## DISCUSSION

### A.   Standards for Motions for Judgment on the Pleadings Rule 12 (c)

A Rule 12(c) motion challenges the sufficiency of the opposing party's pleadings. It can also be used to assert lack of subject matter jurisdiction. It provides a vehicle for summary adjudication on the merits, after the pleadings are closed but before trial, which "may save the [arties needless and often considerable time and expense which otherwise would have been incurred during discovery and trial." Perez v. Wells Fargo & Co., 75 F.Supp.3d 1184, 1187 (ND CA 2014).

Rules 12(b)(6) and (c) are virtually interchangeable. In deciding a Rule 12(c) motion, the

1  court applies the same standards applicable to a Rule 12(b)(6) motion. [Cafasso, U.S. ex rel. v.

2  General Dynamics C4 Systems, Inc., 637 F3d 1047, 1054, fn. 4 (9th Cir. 2011) ["Rule 12(c) is

3  'functionally identical' to Rule 12(b)(6)"]  If the motion is made by the plaintiff, it cannot be granted

4  if the answer raises a fact or an affirmative defense that, if true, would defeat recovery. General

5  Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887

6  F2d 228, 230 (9th Cir. 1989). The appropriate legal standard for motion for judgment on the

7  pleadings is that it will not be granted unless it is "beyond doubt that the [nonmoving party] can

8  prove no set of facts in support of his claim which would entitle him to relief." Enron Oil Trading &

9  Transportation Co., Ltd., 132 F. 3d 526, 529 (9th Cir. 1997).

10       **B.      General Liability Insurance Principles –**

11            **1.      Duty to Defend – Coverage clauses are interpreted broadly in favor of the**

12                 **insured or the claimant.**

13       The relevant legal principles are well known. A CGL policy covers any claim that falls

14  within the insuring agreement unless that claim is specifically excluded. Waller v. Truck Ins. Exch.,

15  Inc.,11 Cal 4th 1, 16 (1995); Westoil Terminals Co., Inc. v. Industial Indem. Co., 110 Cal App 4th

16  139, 146 (2003).  An insurer has a duty to defend an insured if it becomes aware of, or if the third-

17  party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement.

18  Waller v. Truck Ins. Exchange, Inc., 11 Cal.4th 1, 19 (1995). The insurer must defend any claim that

19  would be covered if it were true, even if it is 'groundless, false or fraudulent' Gray v. Zurich

20  Insurance Co., 65 Cal.2d 263, 273 (1966).

21       'Implicit in this rule is the principle that the duty to defend is broader than the duty to

22  indemnify; an insurer may owe a duty to defend its insured in an action in which no damages

23  ultimately are awarded. [Citations.]  Horace Mann Ins. Co. v. Barbara B., 4 Cal.4th 1076, 1081

24  (1993). 'Thus, when a suit against an insured alleges a claim that potentially could subject the

25  insured to liability for covered damages, an insurer must defend unless and until the insurer can

26  demonstrate, by reference to undisputed facts, that the claim cannot be covered. In order to establish

27  a duty to defend, an insured need only establish the existence of a potential for coverage; while to

28  avoid the duty, the insurer must establish the absence of any such potential. [Citation.]' Ringler

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

1   Associates Inc. v. Maryland Casualty Co., 80 Cal.App.4th 1165, 1186 (2000). Doubts concerning the

2   potential for coverage and the existence of [a] duty to defend are resolved in favor of the insured.

3   Montrose Chemical Corp. v. Superior Court, 6 Cal.4th 287, 299–300 (1993); Palp, Inc. v.

4   Williamsburg National Ins. Co., 200 Cal.App.4th 282, 288–289 (2011).

5        Thus, in resolving the question whether a duty to defend exists, "the insurer has a higher

6   burden than the insured. '[T]he insured need only show that the underlying claim may fall within

7   policy coverage; the insurer must prove it cannot' " American States Ins. Co. v. Progressive Casualty

8   Ins. Co., 180 Cal.App.4th 18, 27 (2009).

9        **2.     Exclusions are interpreted narrowly against the insurer.**

10       While coverage clauses are interpreted broadly, exclusionary clauses are construed narrowly

11   against the insurer. State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal.3d 94, 101–102, 109 (1973).

12   "[A]ny exception to the performance of the basic underlying obligation must be so stated as clearly

13   to apprise the insured of its effect." Gray v. Zurich Insurance Co., 65 Cal.2d 263, 269, fn. omitted.

14   (1966). Insurance policy terms "will be given the 'objectively reasonable' meaning a lay person

15   would ascribe to them," and "the context in which a term appears is critical." Century Transit

16   Systems, Inc. v. American Empire Surplus Lines Ins. Co., 42 Cal.App.4th 121, 126 (1996). While

17   "reliance on common understanding of language is bedrock," the requirements of reasonableness

18   and context are "[e]qually important...." (Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins.

19   Co., 5 Cal.4th 854, 867 (1993).)

20       The foregoing principles are why AmTrust's argument that the term "arising out of" is

21   broadly interpreted must be rejected. That is also why AmTrust's reliance upon Acceptance Ins. Co.

22   v. Syufy Enterprises, 69 Cal.App.4th 321, 323, 328 (1999), is completely misplaced.  That case

23   applied a broad interpretation of policy language because the case involved the interpretation of a

24   coverage clause. Here, on the other hand, the issue at hand is the proper interpretation of an

25   exclusion, which must be construed narrowly against the insurer.

26       **C.     The settlement demand letter and accompanying materials are inadmissible, as**

27   **reliance on the same not only requires conjecture, but also is against public policy.**

28       Exhibit 1 to the FAC is a settlement demand letter with attachments. As a consequence, it is

---

10

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

1    inadmissible to prove or disprove the validity of a disputed claim. Evidence of an offer to

2    compromise a disputed claim is not admissible "to prove or disprove the validity or amount of a

3    disputed claim or to impeach by a prior inconsistent statement or a contradiction." FRE 408(a);

4    Bridgeport Music, Inc. v. Justin Combs Publishing, 507 F3d 470, 480-481 (6th Cir. 2007); Coutard

5    v. Municipal Credit Union, 848 F3d 102, 114 (2nd Cir. 2017).

6         Likewise, evidence of conduct or statements made in compromise negotiations is not

7    admissible. FRE 408(a)(2).  In addition to the actual settlement offer, the following may be excluded

8    under Rule 408, admissions of fact made during settlement negotiations are also inadmissible. For

9    example, an otherwise admissible party admission (e.g., "it's all my fault") is inadmissible to prove

10   liability if made during settlement negotiations. FRE 408, Adv. Comm. Notes; see Affiliated Mfrs.,

11   Inc. v. Aluminum Co. of America, 56 F3d 521, 529 (3rd Cir. 1995) [Rule 408 "specifically designed

12   to cover admissions of fact"]; Ramada Develop. Co. v. Rauch, 644 F2d 1097, 1106-1107 (5th Cir.

13   1981) [internal memo confirming D's position on counterclaim inadmissible.]   The law protects

14   candid, open discussions designed to resolve disputes – precisely what the contents of the settlement

15   was intended to do.

16        The Court may question why Wiley and DeRosa did not object to having the settlement

17   demand materials attached as an exhibit to the FAC, or alternatively, immediately move to strike the

18   generally inadmissible materials. However, counsel was mindful that settlement negotiations may be

19   admissible to satisfy jurisdictional requirements of an action for declaratory relief.  Rhoades v. Avon

20   Products, Inc., 504 F3d 1151, 1161 (9th Cir. 2007) [letter with threats of infringement action

21   established jurisdiction requirements.] Here, the only apparent use of the settlement package

22   attached as an exhibit to the FAC was to demonstrate that the amount in controversy met the

23   requisite threshold for purposes of subject matter jurisdiction. In fact, that was all that was admitted

24   in the Answer to Plaintiff's FAC.  Unappreciated, the purpose of attaching the settlement demand

25   was an attempt by Plaintiff to morph it into a judicial admission and to subsequently file this

26   unmeritorious motion.

27        Moreover, even if a permissible purpose can somehow be discerned, the court has discretion

28   to exclude settlement evidence when its probative value is substantially outweighed by the risks of

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

prejudice and confusion. See, FRE 403; <u>Williams v. Chevron U.S.A., Inc</u>., 875 F2d 501, 504 (5th Cir. 1989) [exclusion of evidence offered for impeachment purposes not an abuse of discretion when it was "possible that the jury would have confused its purpose for that precluded by Rule 408"]; <u>LaserDynamics, Inc. v. Quanta Computer, Inc</u>., 694 F3d 51, 77-78 (Fed. Cir. 2012) [Although settlement agreement may in limited circumstances be used to establish royalty damages for patent infringement, its use would place party at "severe legal and procedural disadvantage" and Rule 403 considerations "greatly outweighed" probative value.]

Here, the settlement demand and the attachments are clearly inadmissible and may not be used by the insurer to escape coverage using an exclusion.

**D.    The settlement demand letter and accompanying materials are unquestionably not judicial admissions.   The settlement demand letter is privileged and inadmissible and Defendants' Admission in their Answer that they inhaled non-silica dust "admits" nothing of relevance here.**

In its moving papers, AmTrust argues that a portion of the DeRosa and Wiley answer is a judicial admission. Paragraph 4 of AmTrust's First Amended Complaint states as follows:

"Jurisdiction is proper in this Court under 28 USC section 1332 (a) (1) because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000. This case addresses a dispute over defense and indemnity under a policy of liability insurance for an underlying lawsuit brought by Wiley and DeRosa against Kondzolka and others. In a July 1, 2019, letter—attached in relevant part here as Exhibit 1--Wiley demanded $550,000 from AmTrust to settle her claims against Kondzolka and DeRosa demanded $175,000 to settle his own claims against Kondzolka. Defense expenses in the Wiley suit, moreover, can reasonably be expected to exceed $75,000." Document No. 7, page 2 of 4, paragraph 4.

John De Rosa and Kristina Wiley's Answer to Paragraph 4 of AmTrust's First Amended Complaint states:

"Answering paragraph 4, Defendants are without sufficient information to admit or deny allegations regarding the Court's jurisdiction and on that basis deny.   Defendants admit the remaining allegations in paragraph 4."

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

AmTrust argues that the foregoing pleading constitute a "judicial admission," then couples its argument relying upon this portion of the Answer with a short passage from DeRosa's and Wiley's Rule 26 Joint Scheduling Report also constitutes a "judicial admission." ["dust from tile, grout and mortar spread throughout the home. . . .Wiley and De Rosa inhaled this dust and suffered injuries."]

These are not judicial admissions so as to deliberately, clearly and unequivocally dispense wholly with the need for proof of these facts. The response in the Defendants' Answer had only to do with the amount in controversy, nothing else. Likewise, the excerpts from the Rule 26 Report relative to plaintiffs' inhalation of the dust caused by the Defendants' demolition and construction do not deliberately, clearly and unequivocally dispense with the need to prove beyond doubt that the bodily injuries of the plaintiffs in the underlying action were caused by exposure to silica or silica-related dust.

"Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact*." Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (quoting Ferguson v. Neighborhood Housing Servs. of Cleveland, Inc., 780 F.2d 549, 551 (6th Cir. 1986)).   (quotations omitted). To qualify as a judicial admission, the admission must be 'deliberate, clear, and unequivocal.'" Truckstop.net, L.L.C. v. Sprint Commc'ns Co., 537 F. Supp. 2d 1126, 1135 (D. Idaho 2008) (quoting Heritage Bank v. Redcom Laboratories, Inc., 250 F.3d 319, 329 (5th Cir. 2001)).

By contrast, legal arguments typically do not constitute judicial admissions. See MacDonald v. General Motors Corp., 110 F.3d 337, 341 (6th Cir. 1997). In MacDonald, plaintiffs sought a determination that certain statements of counsel at trial were "judicial admissions." Id. at 339. The court rejected that argument. The Sixth Circuit noted that "counsel's statements dealt with opinions and legal conclusions, and we are thus reluctant to treat them as binding judicial admissions." Id. at 341. The Sixth Circuit reasoned that the statements—which related to negligence and proximate causation—"require the application of rules of law to complex factual patterns." Id. Because the statements dealt with legal conclusions they did not "constitute binding judicial admissions." Id. A contrary rule would transform admissions, "a valuable time-saving device, the voluntary use of

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

1  which should be encouraged, into a trap for the unwary." Id.; See also, Sicor Ltd. v. Cetus Corp., 51

2  F.3d 848, 859-60 (9th Cir. 1995) (holding that the district court erred by finding a party's statement

3  in its complaint a judicial admission, because the party "retracted its judicial admission by

4  subsequently recharacterizing the alleged oral agreement").

5      **E.    Causation is Determined by the "Substantial Factor" Test**

6      AmTrust bootstraps a further argument that because of the "judicial admissions," AmTrust

7  no longer needs need to prove that silica or silica-related dust in whole or in part caused the injuries.

8  Dkt No. 16-1, p. 17 of 19.  AmTrust relies upon Acceptance Ins. Co. v. Syufy Enterprises, 69

9  Cal.App.4th 321, 323, 328 (1999), for the proposition that the exclusion's causation trigger, the

10  "arising in whole or in part, out of" phrase does not impart any particular standard of causation or

11  theory of liability into AmTrust's policy.  Syufy Enterprises, 69 Cal.App.4th at 328. Further,

12  Defendants have not admitted, nor has Plaintiff offered a shred of evidence that, silica played any

13  role, let alone an exclusive one, in causing Defendants' injuries.

14      AmTrust's arguments are without merit. Again, the insurer must prove there is no possibility

15  of coverage. In resolving the question whether a duty to defend exists, "the insurer has a higher

16  burden than the insured. '[T]he insured need only show that the underlying claim may fall within

17  policy coverage; the insurer must prove it cannot.' " American States Ins. Co. v. Progressive

18  Casualty Ins. Co., 180 Cal.App.4th 18, 27 (2009). "The scope of the duty does not depend on the

19  labels given to the causes of action in the third-party complaint; instead, it rests on whether the

20  alleged facts ... reveal a possibility that the claim may be covered by the policy." Atlantic Mutual

21  Ins. Co. v. J. Lamb, Inc., 100 Cal.App.4th 1017, 1034, italics omitted (2002); Cunningham v.

22  Universal Underwriters, 98 Cal.App.4th 1141, 1148 (2002) [same].)

23      Based on the foregoing, it is not enough to show the possibility that an exclusion may apply

24  in order to avoid coverage or the insurer's defense obligation to its insured.  The insurer must prove

25  there is no possibility that any claim is covered.  Here, AmTrust has failed to meet its burden of

26  demonstrating that there is no possibility of coverage. Further, AmTrust has failed to even mention

27  (much less disprove the possibility, or even the likelihood), that the bodily injury claims are the

28

result of more than one cause, i.e., the result of an independent and covered cause, or the result of concurrent causation.

**F.      AmTrust provides no evidence that the injuries were caused by silica. However, even if there existed "concurrent causation," AmTrust owes a duty to defend where there is the possibility of bodily injury caused by exposure to construction dust not containing silica or silica-related dust particles.**

The concurrent cause doctrine results in liability for the insurer where there is an insured risk and an excluded risk that are concurrent, proximate causes of injury. See State of Calif. v. Allstate Ins. Co., 45 Cal.4th 1008, 1032 (2009). In third-party cases, where an accident results from the concurrence of independent causes, the "proximate cause" tort law source of the insured's liability: ""[T]he right to coverage in the third party liability insurance context draws on traditional tort concepts of fault, proximate cause and duty." State of Calif. v. Allstate Ins. Co., 45 Cal 4th at 1035 (2009).

The leading and longstanding landmark case for concurrent cause doctrine is State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal.3d 94 (1973) ("Partridge") In Partridge, the California Supreme Court determined whether a homeowner's policy issued by State Farm covered injuries arising out of an accident that occurred when the defendant was driving his Ford Bronco with two friends. A pistol was being used to shoot jackrabbits through an open window when the car hit a bump and the pistol discharged. Prior to the accident, the defendant had modified the pistol by filing the trigger mechanism so that it had "hair trigger action." The court found that the modification of the pistol and the use of defendant's vehicle were joint causes of the accident. State Farm had admitted that if the modified pistol had fired in a different setting besides a vehicle, that the action would be covered under the policy. Therefore, the Partridge court found that the two actions were independent of one another.

Partridge addressed the problem of multiple causes by looking at the rules governing the insured's underlying liability. This follows from the nature of third party liability insurance, as the California Supreme Court later explained in Garvey v. State Farm Fire & Casualty Co., 48 Cal.3d 395, 407 (1989): "[T]he right to coverage in the third party liability insurance context draws on

---

15

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

traditional tort concepts of fault, proximate cause and duty. This liability analysis differs substantially from the coverage analysis in the [first party] property insurance context, which draws on the relationship between perils that are either covered or excluded in the contract. In liability insurance, by insuring for personal liability, and agreeing to cover the insured for his own negligence, the insurer agrees to cover the insured for a broader spectrum of risks." Accord, Montrose Chemical Corp. v. Admiral Ins. Co., 10 Cal.4th 645, 664 (1995). While coverage under both first and third party insurance is a matter of contract, the contractual scope of third party liability insurance coverage, as reflected in the policy language, depends on the tort law source of the insured's liability. Id., cited in *Grange Insurance Association v. Sran*, 184 F.Supp.3d 799, 817, E.D.Cal. (2016).

The appropriate tort law for causation, the "substantial factor" test utilized to determine tort liability also determines liability insurance coverage when covered and excluded events have concurred in causing bodily injury or property damage: "[W]hen the damages cannot be apportioned between two tortfeasors or between tortious and nontortious causes, a tortfeasor whose acts have been a substantial factor in causing the damages is legally responsible for the whole." State of Calif. v. Allstate Ins. Co., supra, 45 Cal 4th at 1036; see also Liberty Surplus Ins. Corp. v. Ledesma & Meyer Const. Co., Inc., 5 Cal 5th 216, 223 (2018) "As to liability insurance coverage, tort principles cover the question of causation"].

It is now clear that a "predominating cause" is not required in third party cases, as distinguished from first party cases. The covered risk need only be a proximate cause; i.e., a "substantial factor" in causing the loss. (See, City of Carlsbad v. Insurance Co. of State of Pa., 180 Cal App 4th 176, 183(2009) ["concurrent proximate cause" doctrine applies in third party cases.]

Applying the foregoing principles, a duty to defend would arise in the event that the bodily injuries arise out of exposure to dust, some not containing silica or silica -related components, and some with those components. This argument is supported by the language of the exclusion as well as the possibility or even probability that the claimed bodily injuries were not the result of exposure to silica or silica-related dust.  It is important to note, however, that AmTrust provides no evidence, whatsoever, that silica played any role in causing the claimed injuries.

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

1   Further, the language of the exclusion, itself, clearly contemplates the above-stated

2   principles, which import the tort law source of the insured's liability for purposes of evaluating the

3   scope of third party liability insurance coverage. ("Bodily injury" arising, in whole or in part, out of

4   the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica -related

5   dust.") What the concurrent cause doctrine states is that if the bodily injury was caused by the

6   inhalation or ingestion of both non-silica and silica or silica-related dust, that coverage exists.

7   Again, in order to avoid the duty to defend, AmTrust bears the burden of proof to rule out these

8   other possible covered events.  AmTrust has failed to meet its burden and prove that the underlying

9   claim cannot possibly fall within the policy coverage. American States Ins. Co. v. Progressive

10  Casualty Ins. Co., 180 Cal.App.4th 18, 27 (2009) ['[T]he insured need only show that the underlying

11  claim may fall within policy coverage; the insurer must prove it cannot.' "].

12  While the lack of connection between the excluded risk and the insured is more than

13  sufficient to support the conclusion that the exclusion does not apply, other principles of contract

14  interpretation confirm the point. Most importantly, terms of an insurance policy must be read in

15  context. Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co., 42 Cal.App.4th

16  121, 126 (1996) ["the context in which a term appears is critical"].

17  This interpretation is likewise consonant with other principles applicable to exclusionary

18  clauses, which are required to be construed narrowly. In the context of an insured whose business is

19  to replace old flooring and installing new flooring, the language of the silica, silica-dust exclusion

20  could scarcely have apprised the insured that removing old flooring and installing new flooring—

21  virtually the sole purpose of the insured's existence—would be excluded from coverage. See, Gray

22  v. Zurich Insurance Co., 65 Cal.2d 263, 269 (1966) [an exception to the insurer's performance of the

23  basic underlying obligation must clearly apprise the insured of its effect.] Further, Insurance policy

24  terms "will be given the 'objectively reasonable' meaning a lay person would ascribe to them."

25  (Century Transit, supra, 42 Cal.App.4th at p. 126.) Neither layman nor lawyer can read the silica,

26  silica-dust exclusion and be apprised that it basically seeks to exclude the possibility of any and all

27  coverage, including any duty to defend, any time a single speck of silica or silica-dust is present in

28  construction dust.

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

The insurer may argue that the court need not consider the "'objectively reasonable expectations of the insured' " because, under California law, "[i]f contractual language is clear and explicit, it governs." Bay citie v. Superior Court, 2 Cal.4th 1254, 1265, 1264, (1992), citing Civ.Code, § 1638 [the language of a contract governs its interpretation "if the language is clear and explicit, and does not involve an absurdity"].) In the instant case, the silica or silica-related dust exclusion by no means clearly and explicitly excludes a claim "based on" or "involving" the removal of tile flooring, which is an integral part of the insured's business. The language is at least ambiguous, in that it does not expressly state that the exclusion applies any time silica or silica related dust is involved.

In conclusion, based on the foregoing argument and analysis, that is not how the exclusion applies in the instant case. While coverage under both first and third party insurance is a matter of contract, the contractual scope of third party liability insurance coverage, as reflected in the policy language, depends on the tort law source of the insured's liability.

### G.     The Court Has Ample Discretion to Permit Amendment

In the event that the Court for some reason determines that AmTrust's motion has some merit, Defendants respectfully request leave to amend the pleadings.  Although Rule 12(c) does not mention leave to amend, courts have discretion to grant a Rule 12(c) motion with leave to amend (and frequently do so where the motion is based on a pleading technicality). Lonberg v. City of Riverside, 300 F.Supp.2d 942, 945 (CD CA 2004) (finding Rule 12(c) motion "is functionally identical" to a Rule 12(b)(6) motion).]  A dismissal without affording an opportunity to amend to conform the allegations of the pleadings to postfiling developments and evidence obtained during discovery may constitute an abuse of discretion. Edwards v. City of Goldsboro, 178 F3d 231, 241-243 (4th Cir. 1999).

### III.

### CONCLUSION

Based on the foregoing legal discussion and argument, Defendants Kristina Wiley, John DeRosa and Russ Kondzolka respectfully request that this Court deny the motion for judgment on the pleadings in its entirety. In the alternative, in the event that the Court for some reason determines

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings

that AmTrust's motion has some merit, Defendants respectfully request leave to amend the pleadings.

DATED: January 21, 2021                     **DREYER BABICH BUCCOLA WOOD CAMPORA, LLP**


                                            By:   */s/ Robert A. Buccola*
                                                  _____
                                                  ROBERT A. BUCCOLA
                                                  ANDREA R. CROWL
                                                  MIRANDA D. FLICKINGER
                                                  Attorneys for Defendants KRISTINA WILEY and
                                                  JOHN DE ROSA

Defendants' Opposition to Plaintiff's Motion for Judgment on the Pleadings